GEOFFREY HANSEN
Acting Federal Public Defender
Northern District of California
ANGELA CHUANG
Assistant Federal Public Defender
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone:     (415) 436-7700
Facsimile:     (415) 436-7706
Email:         Angela_Chuang@fd.org

Counsel for Defendant Hamilton

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT HAMILTON,<br><br>Defendant. | **Case No.:** CR 21–202 WHO<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO SUPPRESS, MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION**<br><br>**Court:**  Courtroom 2, 17th Floor<br>(set for videoconference)<br>**Hearing Date:**  August 24, 2021<br>**Hearing Time:**  9:00 a.m. |

TO: UNITED STATES OF AMERICA, PLAINTIFF; STEPHANIE HINDS, ACTING UNITED STATES ATTORNEY; AND ANKUR SHINGAL, ASSISTANT UNITED STATES ATTORNEY

PLEASE TAKE NOTICE that defendant Robert Hamilton hereby moves this Court for an order suppressing all fruits of the unlawful search and seizure of his person on February 27, 2021. This motion is based on this notice and motion; the following memorandum of points and authorities; the accompanying declarations and exhibits; the Fourth Amendment to the United States Constitution; all other applicable constitutional, statutory, and case authority; and such evidence and argument as may be presented at the hearing of this motion.

Should any disputed issues of material fact arise with respect to this motion to suppress, Mr. Hamilton further moves this Court for an evidentiary hearing.

# INTRODUCTION

On February 27, 2021, officers from the San Francisco Police Department ("SFPD") arrested Robert Hamilton without a warrant for suspected involvement in a shooting that had occurred nearly two weeks earlier. No witness had identified Mr. Hamilton as the shooter, despite the fact that one witness stated he could identify the shooter if he were to see him again. Surveillance video of the shooting did not show the shooter's face. During the course of its investigation, SFPD learned that about a week before the shooting, Mr. Hamilton had been a passenger in the car that was later used in the shooting. SFPD also learned that on the day of the shooting, Mr. Hamilton's mother was in the car from which the shots were fired. Although SFPD still had many leads left to pursue in the shooting investigation, they arrested him without a warrant when officers spotted Mr. Hamilton on the streets of San Francisco nearly two weeks later. Officers falsely told Mr. Hamilton that they had a warrant for his arrest, and after a short chase, secured him in handcuffs and drove him to the station. Because the government cannot establish that the officers had probable cause to arrest Mr. Hamilton, all evidence obtained as a result of this unlawful seizure and subsequent searches must be suppressed.

# FACTUAL BACKGROUND[1]

At about 2 a.m. on February 14, 2021, SFPD officers responded to reports of a shooting that occurred at the intersection of Turk and Hyde Streets. Declaration of Angela Chuang in Support of Defendant's Motion to Suppress ("Chuang Decl."), Ex. H at 54–55.[2] Surveillance footage of the incident showed a taxicab dropping off a woman on the corner of Hyde and Turk at 1:55 a.m. Chuang Decl., Ex. G at 44. The woman then crossed the street out of the camera frame. *Id.* About 30 seconds later, a black Hyundai parked behind the taxicab and a man exited the vehicle and walked in the same direction as the woman. *Id.* at 45. From this footage, the SFPD obtained the license plate of the Hyundai—8LQK609. *Id.* A minute later, the woman and the man walked back across the street and got into the parked Hyundai. *Id.* The surveillance video does not clearly show the man's face at any

---

[1] Facts presented in this section are drawn from police reports, CAD reports, and independent investigation. Mr. Hamilton reserves the right to contest the facts as presented following further investigation or other proceedings.

[2] The discovery produced by the government includes Bates numbers containing nine characters. This motion will cite only to the final number (*e.g.*, 44). Similarly, citations to audio and video files will identify the relevant minute and second points (*e.g.*, Ex. A at 01:30).

DEF'S MOT. TO SUPPRESS
*HAMILTON*, CR 21–202 WHO

1   time. Chuang Decl., Ex. L at 00:29–02:32. Less than a minute later, as the Hyundai was driving
2   southbound on Hyde Street, a gun appears to fire from inside the vehicle. Chuang Decl., Ex. G at 45.
3       While investigating the February 14 shooting, SFPD Sergeant Habib learned that three victims
4   had suffered gunshot wounds, and interviewed all three on the day of the shooting. *Id.* at 43–46. One
5   of the victims stated that he did not remember what happened and could not provide a description of
6   the shooter. *Id.* at 43. The second victim stated that he saw a Black man driving and shooting from a
7   four-door vehicle, but could not provide any other information. *Id.* The third victim stated that the
8   shooter was a Black man who had walked up to an older Black woman just before the shooting. *Id.* at
9   45. The victim had never seen the man or woman before, but described the man as about 33 years
10  old, 5'6'' in height, and having no facial hair. *Id.* at 46. The victim did not speak English, and the
11  only word he understood in the conversation between the man and the woman was the man saying the
12  word "motherfucker." Chuang Decl., Ex. I at 08:01. The victim did not know the relationship
13  between the man and the woman, although he speculated that the woman *could* be the man's mother
14  or another family member. *Id.* at 07:56. During his statement, the victim stated several times that he
15  did not know if the woman was the man's mother. *Id.* The victim also stated that he got a good look
16  at the man and could identify him if he saw him again. Chuang Decl., Ex. G at 46.
17      Sergeant Habib next traced the license plate of the Hyundai. By February 15, 2021, he learned
18  that this car had been rented to a person named Matalina Walker on February 8, 2021. *Id.* The
19  Hyundai had a dashcam recorder installed. Sergeant Habib reviewed this dashcam footage, which had
20  a short video from February 8, 2021. The dashcam footage showed a woman driving and two men
21  riding in the car—one in the front passenger seat and one in the back seat behind the woman. Chuang
22  Decl., Ex. K at 00:10. Sergeant Habib erroneously noted that the man in the front seat was "operating
23  the vehicle" when the video clearly shows that the woman was driving. *Id.*; Chuang Decl., Ex. G at
24  46. Sergeant Habib believed that the woman in the car was Ms. Walker, the person who had rented
25  the car. *Id.* at 48.
26      Sergeant Habib also investigated the taxicab from the surveillance video. On February 17, he
27  learned that on the night of the shooting, the taxicab picked up a woman named "Stephanie" from an
28  address on Arbor Street in San Francisco. *Id.* at 48. He traced that address, and learned that a woman

named Stephanie Warren lived there. *Id.* He also learned that Ms. Warren's son—Mr. Hamilton—lived at that address as well. *Id.* at 48–49. Based on a photo he obtained of Mr. Hamilton, Sergeant Habib believed that Mr. Hamilton was the man in the front passenger seat of the Hyundai on February 8, 2021. *Id.* at 49.

Mr. Hamilton is 26 years old, 5'5'' in height, and had facial hair on his chin and upper lip on the date of his arrest. Chuang Decl., Ex. J at 01. No witnesses in the shooting investigation ever identified Mr. Hamilton as the shooter, and SFPD never conducted any identification procedures in the case. Nonetheless, on February 17, 2021, Sergeant Habib asserted that he suspected Mr. Hamilton in the February 14 shooting. Chuang Decl., Ex. G at 50 ("I believe (S1) [Robert Hamilton] had committed the shooting 2/14/21."). In the two weeks between February 17 and 27, SFPD officers failed to obtain an arrest warrant for Mr. Hamilton.

On February 27, SFPD officers apparently happened to spot Mr. Hamilton hanging out in San Francisco. Sergeant Payne "notified Tenderloin police officers that a suspect involved in a shooting incident was in the area of Jones and Market Street." Chuang Decl., Ex. D at 27. In response, Sergeant Solorzano "in plain clothes, responded to Jones and Market Street to gather intel on Hamilton." *Id.* Neither Sergeant Payne nor Solorzano was apparently involved in Sergeant Habib's investigation into the February 14 shooting, nor were they independently familiar with Mr. Hamilton. The officers devised a "plan to take Hamilton into custody." Chuang Decl., Ex. E at 32; *see also* Chuang Decl., Ex. A at 24 ("we formulated a plan"). Sergeant Solorzano reported that "[u]nder my direction, *multiple* uniformed officers responded to the area in *numerous* marked police vehicles *to put our plan into action* and take Hamilton into custody." *Id.* (emphasis added).

Sergeant Solorzano provided Officers Avila and Juarez with Mr. Hamilton's mugshot and his approximate location. Chuang Decl., Ex. D at 27. Around 4:30 p.m., in full police uniform, Officers Avila and Juarez drove their police cruiser southbound on Jones Street. Chuang Decl., Ex. A at 27. They saw a man on the sidewalk whom they believed to be Mr. Hamilton, wearing a face mask covering his entire mouth and nose. Chuang Decl., Ex. C at 01:10. The two officers exited their marked police vehicle and Officer Avila stated to Mr. Hamilton: "Hey come here, we need to talk to you." Chuang Decl., Ex. B at 01:05. Immediately thereafter, Officer Juarez shouted: "Robby

1  Hamilton, there's a warrant for your arrest, I need you to stop." Chuang Decl., Ex. C at 01:07; *see*
2  *also* Chuang Decl., Ex. A at 24 ("Officer Juarez called Hamilton by his first and last name and
3  advised him he had a warrant.").
4      Mr. Hamilton ran from Officers Avila and Juarez, and other SFPD units at the scene assisted in
5  pursuing him. Chuang Decl., Ex. A at 24. During the pursuit, Officer Navalle kicked Mr. Hamilton in
6  his right leg, causing Mr. Hamilton to fall. Chuang Decl., Ex. D at 27. Mr. Hamilton quickly got up
7  and continued running. *Id.* At this point, Officer Navalle pointed his department-issued AR-15 at Mr.
8  Hamilton. *Id.* As Mr. Hamilton ran, a marked SFPD vehicle parked directly in front of his path. *Id.* At
9  this point, Sergeant Solorzano dismounted from his bicycle, causing it to roll into Mr. Hamilton.
10 Chuang Decl., Ex. E at 32. At the same time, Officer Navalle kicked Mr. Hamilton in the stomach
11 area, causing him to fall onto Sergeant Solorzano's bicycle. Chuang Decl., Ex. D at 27. Once Mr.
12 Hamilton was facedown on the ground, at least nine SFPD officers surrounded him with several of
13 them on top of him. Chuang Decl., Ex. B at 02:10. While restraining Mr. Hamilton, one officer
14 stated: "Fuck you going homeboy, you ain't going nowhere." Chuang Decl., Ex. C at 01:46–01:49.
15 Officer Haley then placed Mr. Hamilton into handcuffs. Chuang Decl., Ex. A at 25. While being
16 handcuffed, Mr. Hamilton asked what was going on and Officer Juarez again falsely claimed the
17 existence of a warrant and responded: "Like I announced to you as soon as I saw you, there is a
18 warrant for your arrest." Chuang Decl., Ex. C at 02:21–02:26.
19     After handcuffing Mr. Hamilton, the officers rolled him onto his side in order to get the bicycle
20 out from underneath him. Sergeant Solorzano then pointed to "a black handgun protruding from
21 underneath Hamilton's body." Chuang Decl., Ex. E at 32; *see also* Chuang Decl., Ex. C at 02:41
22 (officers saying "gun, gun, gun!" and "don't touch, don't touch!"). The firearm—a 9mm pistol—was
23 seized by Officer Cavanaugh. Chuang Decl., Ex. F at 34. Officer Avila seized a backpack and plastic
24 Target bag that Mr. Hamilton had with him. Chuang Decl., Ex. A at 25. Officer Haley then searched
25 Mr. Hamilton's person and seized $6,692 in cash and two cell phones. *Id.* SFPD also seized
26 suspected marijuana, suspected promethazine, Mr. Hamilton's clothing, and two scales. *Id.* at 21–22.
27     On May 13, 2021, Mr. Hamilton was indicted in the instant matter for Felon in Possession of a
28 Firearm and Ammunition, in violation of 18 U.S.C. § 922(g)(1). The allegation is based on the gun

recovered on February 27. Mr. Hamilton is not charged federally for the February 14 shooting, though it is the subject of a separate state court prosecution currently pending against him.

## ARGUMENT

### I. The Government Bears The Burden Of Proving That Mr. Hamilton's Warrantless Arrest And Search Did Not Violate The Fourth Amendment

"The Fourth Amendment provides in relevant part that '[t]he right of the people to be secure in their persons, houses, papers, and effect, against unreasonable searches and seizures, shall not be violated.'" *United States v. Jones*, 132 S. Ct. 945, 949 (2012)). It is a bedrock principle that, subject to a few specifically established and well-delineated exceptions, a warrantless arrest is "presumptively unreasonable." *United States v. Driver*, 776 F.2d 807, 810 (9th Cir. 1985) (quoting *Payton v. New York*, 445 U.S. 573, 586 (1980)). "The burden of proving that a warrantless search or seizure falls within an exception to the warrant requirement is on the government." *See United States v. Scott*, 705 F.3d 410, 416 (9th Cir. 2012); *United States v. Cervantes*, 703 F.3d 1135, 1141 (9th Cir. 2012) ("Because warrantless searches and seizures are per se unreasonable, the government bears the burden of showing that a warrantless search or seizure falls within an exception to the Fourth Amendment's warrant requirement."). The government must prove the lawfulness of a warrantless seizure or search by a preponderance of the evidence. *See United States v. Vasey*, 834 F.2d 782, 785 (9th Cir. 1987) ("The government must prove the existence of an exception to the Fourth Amendment Warrant Requirement by a preponderance of the evidence."). If the government does not carry its burden, all fruits of the warrantless arrest must be suppressed. *United States v. Ricardo D.*, 912 F.2d 337, 342 (9th Cir. 1990).

Thus, the government must prove that an exception to the warrant requirement justified Mr. Hamilton's warrantless arrest, the subsequent warrantless search of his person, and the warrantless seizure of items uncovered by such search. Mr. Hamilton contends that the government cannot meet its burden, and therefore, all evidence obtained as a result of these unlawful actions must be suppressed as "fruit of the poisonous tree." *See Wong Sun v. United States*, 471, 488 (1963).[3]

---

[3] "It is well established that under the 'fruits of the poisonous tree' doctrine, evidence obtained subsequent to a violation of the Fourth Amendment is tainted by the illegality and is inadmissible . . . unless the evidence obtained was 'purged of the primary taint.'" *United States v. Washington*, 490 F.3d 765, 775 (9th Cir. 2007) (quoting *Wong Sun v. United States*,

**II.  SFPD Lacked Probable Cause To Arrest Mr. Hamilton On February 27 For The February 14 Shooting**

The Supreme Court has indicated its preference that law enforcement obtain a warrant rather than act without one. *See United States v. Ventresca*, 380 U.S. 102, 106 (1965). "The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate *instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.*" *Id.* (internal quotation marks omitted) (emphasis added). The SFPD officers who arrested Mr. Hamilton on February 27 claimed that they had a warrant for his arrest. Chuang Decl., Ex. C at 01:07. This was patently untrue. The SFPD had not bothered to obtain a magistrate's neutral and detached determination about the evidence by seeking an arrest warrant before arresting Mr. Hamilton. There was plenty of time to seek an arrest warrant in the ten days between when Sergeant Habib suspected Mr. Hamilton in the shooting (February 17) and Mr. Hamilton's arrest (February 27). Chuang Decl., Ex. G at 50. Nor did the SFPD seek an arrest warrant after spotting Mr. Hamilton on February 27, despite the fact that he was under surveillance for long enough that multiple officers were able to meet at Tenderloin Station, "devise[] a plan to take Hamilton into custody," request backup units, and re-deploy back to Jones and Market Street. Chuang Decl., Ex. E at 32. Their failure to do so reflects the objective reality that their investigation to date did not rise to the level of probable cause that Mr. Hamilton was the shooter. SFPD's failure to seek a warrant, when doing so would have been practicable, weakens the government's assertion of probable cause. *See United States v. Watson*, 423 U.S. 411, 423 (1976) ("Law enforcement officers may find it wise to seek arrest warrants where practicable to do so, and their judgments about probable cause may be more readily accepted where backed by a warrant issued by a magistrate.").

---

371 U.S. 471, 488 (1963); *see also United States v. Davis*, 332 F.3d 1163, 1170–71 (9th Cir. 20013) (stating that "the standard articulated in Wong Sun remains the relevant test."). "The question is whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *United States v. Johns*, 891 F.3d 243 (9th Cir. 1989). Furthermore, "the government has the burden to show that the evidence is not 'the fruit of the poisonous tree.'" *United States v. Twilley*, 222 F.3d 1092, 1097 (9th Cir. 2000).

DEF'S MOT. TO SUPPRESS
*HAMILTON*, CR 21–202 WHO

"Under the Fourth Amendment, a warrantless arrest requires probable cause." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007). Probable cause is an "objective standard"; it is met "when under the totality of circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that the defendant had committed a crime." *Id.* (internal quotation marks and brackets omitted). While "conclusive evidence of guilt is of course not necessary . . . to establish probable cause, mere suspicion, common rumor, or even strong reason to suspect are not enough." *See id.* (internal quotation marks and brackets omitted).

The circumstances in *Ricardo D.* are instructive. *See* 912 F.2d at 338. In that case, three federal agents pursued a van suspected of trafficking marijuana in rural Arizona. *See id.* The van stopped suddenly, and an agent saw "a young, thin man, not too tall" jump out and run away. *See id.* After securing the driver and bundles of suspected marijuana, the agents informed local law enforcement about the escaped passenger. *See id.* Later that night, while the local law enforcement officers were investigating this incident, a truck driver asked them if they were looking for "a young Mexican kid." *Id.* The driver explained that he had picked up a young man about half a mile from where the van had been stopped, and dropped him off at a pay phone in a nearby town. *See id.* The officers drove to the town, saw a young man "crouched behind a tree, approximately twenty feet from a pay phone and an adjacent restaurant," and quickly arrested him. *Id.*

The Ninth Circuit held that the officers lacked probable cause to believe that the young man they arrested was the same person who had run from the van. *See id.* at 342. The Court acknowledged that the circumstances the officers encountered were suspicious: they found a young man crouching behind a tree, exactly where a truck driver had dropped off a young man he had picked up about half a mile from where federal agents had seen a "young, thin man, not too tall" jump out of a van containing suspected marijuana. *See id.* But they found those circumstances insufficient to establish probable cause, stating that "there was insufficient information to lead a reasonable person to believe" that the young man had been the one who fled from the van. *Id.*

The same analysis applies here. Based on surveillance video and witness statements, officers suspected that the February 14 shooting was committed by a 33-year-old Black man driving a particular Hyundai. Chuang Decl., Ex. G at 44–46. But the evidence that Mr. Hamilton was that man

was quite slim. As the SFPD knew, the car had not been rented under his name. *Id.* at 48. He had been a passenger—not a driver—in that car nearly a week before the shooting. Chuang Decl., Ex. K at 00:10. Such an attenuated association with a car used in a crime is not enough to establish probable cause that Mr. Hamilton was driving the car and committed the shooting on February 14. *See Lopez*, 482 F.3d at 1074 (9th Cir. 2007) ("The government's analysis, however, overstates the significance of Lopez's connection to the getaway car, insofar as it is contended that the connection shows Lopez was the attempted shooter."). No doubt, SFPD had a basis to believe that Mr. Hamilton's mother was at the scene of the shooting. Chuang Decl., Ex. G at 48. But that does not automatically translate to substantiation that the shooter was her son, Mr. Hamilton, rather than another Black man.[4] And indeed, the evidence that Mr. Hamilton was the shooter was weak and certainly did not amount to probable cause.

The victim who provided the most information to the police speculated with no real basis that the woman and the suspected shooter might be mother and son, but repeated several times that he did not know if that was actually the case, or if they were connected in another way. Chuang Decl., Ex. I at 07:51. Indeed, the victim did not speak English and did not understand the conversation between the woman and the suspected shooter with the exception of a single utterance of "motherfucker." *Id.* The SFPD were thus well aware that this witness did not have any knowledge or factual basis to support his stab-in-the-dark guess that the woman was the suspected shooter's mother, but apparently accepted such speculation without question and without further investigation. As the Ninth Circuit has held, "in seeking to establish probable cause, officers may not solely rely on the claim of a citizen witness . . ., but must independently investigate the basis of the witness' knowledge or interview other witnesses." *United States v. Struckman*, 603 F.3d 731, 742 (9th Cir. 2010) (internal quotations and citation omitted); *see Hopkins v. Bonvicino*, 573 F.3d 752, 767 (9th Cir. 2009) ("[S]tatements from a witness, without further investigation by the police, are insufficient to support probable cause."). Furthermore, Mr. Hamilton did not fit the description given by the victim: Mr. Hamilton is 26 years old and has noticeable facial hair, while the victim stated that the shooter was about 33 years

---

[4] The SFPD also seemingly and conveniently ignored the fact that the dashcam footage showed another Black man riding in the car on February 8.

DEF'S MOT. TO SUPPRESS
*HAMILTON*, CR 21–202 WHO

8

old and had no facial hair. *See Lopez*, 482 F.3d at 1073 (no probable cause when defendant "matched the general description of the suspect as a young Hispanic man," but "did not fit the more specific aspects of the description"); Chuang Decl., Ex. J at 01, Ex. G at 46.

Finally, the SFPD inexplicably failed to pursue multiple additional avenues of investigation. *See Struckman*, 603 F.3d at 742 (no probable cause when there was "much else the officers could have done to investigate the reported activity") (internal quotation marks omitted). They never questioned or attempted to question Mr. Hamilton's mother about what happened and who was present on February 14. They never questioned or attempted to question Ms. Walker about the car that had been rented under her name. They never investigated whether Mr. Hamilton's mother had other sons, relatives, or friends who better matched the description of the shooter. As previously noted, they never investigated the other Black man that appeared in the dashcam video from February 8. Most egregiously, they never followed up with any victim—one of whom stated that he could identify the shooter if he saw him again—to conduct an identification procedure to see whether anyone would identify or conversely, exclude, Mr. Hamilton. Chuang Decl., Ex. G at 46. Simply put, the limited information that the SFPD had about who had committed the February 14 shooting was insufficient to justify Mr. Hamilton's violent warrantless arrest on February 27.

## CONCLUSION

For the foregoing reasons, Mr. Hamilton respectfully requests that this Court suppress the fruits of the warrantless arrest and search described herein. Mr. Hamilton also requests that the Court order an evidentiary hearing as necessary to resolve any material factual disputes.

Dated:   June 22, 2021                    Respectfully submitted,

                                          GEOFFREY HANSEN
                                          Acting Federal Public Defender
                                          Northern District of California

                                               /S
                                          ANGELA CHUANG
                                          Assistant Federal Public Defender