STEPHANIE M. HINDS (CABN 154284)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

EVAN M. MATEER (CABN 326848)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7181
    FAX: (415) 436-7234
    Evan.Mateer@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 3:21-cr-202-WHO |
| Plaintiff, | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| v. | Court: Judge William H. Orrick |
| ROBERT HAMILTON, | Date: June 23, 2022 |
| Defendant. | Time: 1:30 p.m. |

## I. INTRODUCTION

On February 27, 2021, San Francisco Police Department Officers were looking for the suspect in a shooting from approximately two weeks prior. That suspect was the defendant, Robert Hamilton. When officers located the defendant, they told him to stop. But he did not stop. He fled and led the police on a dangerous chase through busy San Francisco streets and sidewalks. Even after being tripped to the ground, the defendant persisted. Finally, Officer Joseph Navalle was able to knock him to the ground. While chasing the defendant, Officer's had seen the defendant reach for his waist band and believed that he was armed. They were right. Under the defendant when he was arrested was a loaded semi-automatic handgun, a firearm that he knew he was prohibited from possessing because of prior felony convictions. And that is not all: the defendant also had more than $6,500 in cash and nearly three quarters of a pound of marijuana. The defendant was not just a suspect in a shooting, and he was not just any other felon with a firearm; he was an armed drug dealer with significant amounts of money and drugs. In light of this dangerous conduct, the government recommends a sentence of 46 months in prison.

## II. OFFENSE CONDUCT AND BACKGROUND

On February 27, 2021, SFPD officers observed the defendant on Jones Street in San Francisco. At that time, he was wanted in connection with a February 14 shooting, PSR ¶ 6. Officers in full uniform and driving marked vehicles attempted to stop the defendant and arrest him for the shooting. *Id.* But the defendant fled. *Id.* Officers saw the defendant reach for his waistband and ordered him to show his hands and get on the ground. *Id.* ¶7. The defendant did not show his hands and did not stop, but continued to flee, turning onto Market Street. *Id.* Eventually his path was blocked by an SFPD vehicle, an SFPD officer forced him to the ground, and he was apprehended. *Id.* After being handcuffed, officers found a Walther PPS 9mm handgun loaded with seven 9mm rounds directly under his body. *Id.* ¶8. A subsequent search of the defendant turned up 331 grams of suspected marijuana, suspected promethazine, two digital scales, and approximately $6,692.00 in small denomination bills. *Id.* The suspected marijuana was later lab tested and returned a positive result of THC, the psychoactive substance in marijuana.

On April 9, 2021, the defendant was charged by complaint with one count of violating 18 U.S.C. § 922(g)(1) (felon in possession of a firearm). Dkt. 1. On May 13, 2021, a grand jury returned a one-count indictment charging the defendant with a violation of 18 U.S.C. § 922(g)(1). Dkt. 9. On July 7,

2021, a grand jury returned a superseding indictment charging the defendant with one count of violating 18 U.S.C. § 922(g)(1) and one count of violating 18 U.S.C. § 924(c)(1) (using, carrying, or possessing a firearm in connection with a drug trafficking crime and possession in furtherance of a drug trafficking crime). Dkt. 23. On February 28, 2022, following a jury trial, the defendant was found guilty of Count One of the Superseding Indictment. The defendant was acquitted on Count Two. Dkt. 116. On May 6, 2022, the Court denied the defendant's motion for a new trial. Dkt. 142.

### III.     THE SENTENCING GUIDELINES CALCULATION

The PSR calculates the offense level as follows (PSR ¶¶ 13-22):

    a.    Base Offense Level, U.S.S.G. § 2K2.1(a)(6)(A):    14

    b.    Total Offense Level:    14

As the PSR indicates, a base offense level of 14 applies in this case. Pursuant to U.S.S.G. § 2K2.1(a)(6)(A), the base level for a felon in possession of a firearm offense is 14 when the defendant is a prohibited person. Because defendant had previously been convicted of a felony, he is a prohibited person and the requirement of § 2K2.1(a)(6)(A) is met.

However, the government believes that the Court should apply a four-level enhancement pursuant to USSG §2K2.1(b)(6)(B), which provides for an increase if the defendant "used or possessed any firearm or ammunition in connection with another felony offense."[1] The defendant possessed his firearm "in connection with" the sale of narcotics, which is a felony pursuant to both 18 U.S.C. § 841(a) and California state law. Although the defendant was acquitted on Count Two, which charged him with the similar offense of possessing a firearm in connection with narcotics trafficking in violation of 18 U.S.C. 924(c), a sentencing court may consider acquitted conduct that is established by a preponderance of the evidence. *See United States v. Mercado,* 474 F.3d 654, 656 (9th Cir. 2007). Under this less exacting standard, there is ample evidence in the record to establish that the defendant possessed his firearm in connection with narcotics trafficking.

---

[1] The Probation Officer had included the enhancement under USSG §2K2.1(b)(6)(B) in the draft pre-sentence report. The government agreed with its inclusion, and pursuant to Crim. L. R. 32-4(c)(1) submitted a statement noting no objections. However, the defendant objected to the inclusion of the enhancement. In response, the Probation Officer removed the enhancement in the final report. *See* ADDENDUM TO THE PRESENTENCE REPORT. For the reasons elaborated in this memorandum, the government believes that the enhancement is applicable to the guidelines calculations in this case.

First, the record clearly establishes that the defendant possessed marijuana with intent to distribute it. As Special Agent Mateer explained, the amount of marijuana possessed by the defendant was far more than the average user would possess for their personal use. Indeed, the amount the defendant possessed (331 g) is more than 10 times greater than the legal limit for personal use possession under California state law (28.5 g). *See* Trial Exhibit 94 (Factual Stipulation 5); California Health and Safety Code 11357. Special Agent Mateer also testified that the street value of these narcotics themselves was more than $3,000. The amount and value of the narcotics alone create a strong inference of intent to distribute.

The defendant's intent to distribute marijuana is confirmed by the other items he possessed at the time of his arrest. The defendant possessed two digital scales, which are used to measure out narcotics in sale amounts. *See* Trial Exhibits 1 and 17. The defendant possessed more than $6,500 in cash, mostly in small denomination, which was wadded up in various pockets of his clothes—conduct consistent with the many small transactions of a street level drug dealer. *See* Trial Exhibits 2 and 18. The defendant also possessed multiple cell phones, which Special Agent Mateer explained is a tactic used by drug dealers to avoid detection by law enforcement. *See* Trial Exhibit 19. Finally, the defendant was convicted in 2015 of possession of marijuana for sale, indicative of his intent in possessing marijuana during this offense. *See* Trial Exhibit 86. In total, the most reasonable conclusion from the evidence in the record is that the defendant possessed the marijuana with the intent to distribute it.

The record also establishes by a preponderance of the evidence that the defendant possessed his firearm in connection with his drug trafficking. Drug dealing is risky business. The defendant was carrying the firearm with him while he was carrying large amounts of cash and valuable narcotics. And as Special Agent Mateer testified, drug dealers will carry firearms to mitigate the risk that they may be robbed of their drugs or their money. This is particularly necessary when dealing drugs in a neighborhood like The Tenderloin, which is a high crime area where a robbery is a real possibility. The firearm therefore "facilitated" the defendant's drug business by protecting him from would be robbers, thus "emboldening" him to sell drugs. *See United States v. Gonzales*, 506 F.3d 940 (9th Cir. 2007) (upholding application of four-level enhancement where police found a firearm in the same bag as methamphetamine). He therefore possessed the firearm "in connection" with his felony drug dealing. The Court should accordingly apply the four-level enhancement under USSG §2K2.1(b)(6)(B).

The government's guidelines calculation are therefore as follows:

    a. Base Offense Level, U.S.S.G. § 2K2.1(a)(6)(A):    14

    b. Specific offense characteristics under U.S.S.G. 2 K2.1(b)(6)(B)    +4

    c. Total Offense Level:    18

The government agrees with the PSR's calculation of the defendant's criminal history. On May 19, 2015, the defendant was convicted of Assault with a Deadly Weapon (CPC 245(a)(1)) and sentenced to 361 days in jail. PSR ¶ 26. On October 28, 2015, the defendant was convicted of Possession of Marijuana for Sale (CHS 11359) and sentenced to 2 days in jail. *Id.* ¶ 27. On January 18, 2016, the defendant was convicted of two counts of First Degree Robbery (CPC 211) and Infliction of Injury on Elder or Dependent Adult (CPC 368(b)(1). *Id.* ¶ 28. These felony convictions resulted in a sentence of 361 days in jail. Finally, on July 22, 2018, the defendant was convicted of Hit and Run with a Death or Injury (VC 20001(a) and Second Degree Burglary (CPC 459), felonies resulting in a sentence of 3 years in prison. *Id.* ¶ 29.

Based on these convictions, the defendant's total criminal history score is eight, yielding a Criminal History Category (CHC) of IV. PSR ¶ 31. The applicable sentencing guidelines range for Offense Level 18 and CHC IV is 41-51 months.

**IV. SENTENCING RECOMMENDATION**

**A. Legal Standard**

The United States Sentencing Guidelines serve as "the starting point and the initial benchmark" of any sentencing process and are to be kept in mind throughout the process. *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008); *see also United States v. Kimbrough*, 522 U.S. 85, 108 (2007). The overarching goal of sentencing, as set forth by Congress, is for the Court to "impose a sentence sufficient, but not greater than necessary." *Carty*, 520 F.3d at 991 (citation omitted). In accomplishing that goal, the Court should consider the factors set forth under 18 U.S.C. § 3553(a), which include:

    (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

    (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (3) the need for the sentence imposed to afford adequate deterrence to criminal conduct; and

(4) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

**B. The Government's Recommended Sentence of 46 Months is Sufficient but Not Greater than Necessary**

The seriousness of the offense, the history and characteristics of the defendant, and the need for specific and general deterrence all support a 46-month sentence. To begin with, the defendant's conduct here is serious and dangerous. Firearms and narcotics trafficking is a volatile combination, that can and frequently does result in the sort of gun violence that is plaguing San Francisco and other Bay Area communities. And the context of the defendant's possession made this combination of firearms and narcotics here particularly potent. He possessed the loaded firearm to protect nearly $10,000 combined in cash and narcotics, in a neighborhood known to be a hotbed of crime. Worse, he did this in the middle of the day, when the streets of The Tenderloin are busy with San Franciscans going about their days. The risk of a violent incident resulting from this conduct was high, and it put the community at substantial risk. The defendant put the community at further risk when he fled from police, while armed, and led them on a chase through those same busy streets, disregarding the possibility that somebody would be hurt during his flight. This dangerous conduct alone justifies a sentence of 46 months.

The defendant's history and characteristics also justify the government's recommended sentence. This was not an isolated event. As noted in the PSR, the defendant has two felony and two misdemeanor convictions, several of which were violent offenses. PSR ¶¶ 26-26. This likely understates the defendant's involvement in criminal activity. The PSR notes 13 addition arrests that did not result in conviction, as well as pending state charges for attempted murder related to the February 14, 2021 shooting the officers were investigating when the defendant was arrested on these charges. *Id.* at ¶¶ 32-45.

The defendant's past behavior—multiple felony and misdemeanor convictions and numerous arrests—show that nothing up to this point has altered the defendant's life trajectory away from criminality. A 46-month sentence is necessary to do just that. To that end, the government also requests that the Court impose a 3-year term of supervised release and the following suspicionless search condition:

Special Condition (Searches)
The defendant shall submit his person, residence, office, vehicle, electronic devices and their data (including cell phones, computers, and electronic storage media), and any property under defendant's control to a search. Such a search shall be conducted by a United States Probation Officer or any federal, state, or local law enforcement officer at

any time, with or without suspicion. Failure to submit to such a search may be grounds for revocation; the defendant shall warn any residents that the premises may be subject to searches.

## V. CONCLUSION

For the foregoing reasons, the United States recommends that the Court sentence the defendant to 46 months' imprisonment, 3 years' supervised release, a $100 special assessment, and forfeiture.

DATED: June 14, 2022   Respectfully submitted,

STEPHANIE M. HINDS
United States Attorney

/s/ Evan M. Mateer
EVAN M. MATEER
Special Assistant United States Attorney